IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **EDWIN SNELL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**HIRERIGHT LLC**, a Delaware company,<br><br>*Defendant,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Edwin Snell ("Plaintiff Snell" or "Snell") brings this Class Action Complaint and Demand for Jury Trial against Defendant HireRight LLC, ("Defendant" or "HireRight") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Snell, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Edwin Snell is a resident of Porterdale, Georgia.

2. Defendant HireRight is a Delaware limited liability company. Defendant HireRight conducts business throughout this District, Georgia, and the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant conducts business throughout Georgia, and the Defendant's actions were directed towards the Plaintiff who resides in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case was directed to and received by the Plaintiff while residing in this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2022 alone, at a rate of 126.3 million calls per day. www.robocallindex.com (last visited February 6, 2022).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. Defendant HireRight is a company which provides employee verification services to businesses across the U.S.[3]

16. Defendant HireRight places outbound calls to run employee background verification checks and to solicit their services to potential new customers.

17. Defendant HireRight uses pre-recorded voice message calls to consumers, to run employee background checks for its clients, despite having never obtained the necessary consent required to place such calls to those consumers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/hireright/about/

18. For example, in Plaintiff Snell's case, the Defendant placed multiple pre-recorded calls to Snell's cell phone number despite the fact that Snell never consented to receive such call from the Defendant.

19. There are numerous complaints posted online about unsolicited calls that consumers received from or on behalf of Defendant HireRight, including regarding unsolicited pre-recorded voice message calls:

- "Got 4 messages asking about employment verification of someone I've never heard of. The 4 messages all sounded like the same recording. I smell scam! They're probably fishing for information." [4]

## PLAINTIFF SNELL'S ALLEGATIONS

20. Plaintiff Snell is the subscriber and sole user of the cell phone number 404-382-xxxx.

21. Plaintiff Snell has been receiving a series of calls from Defendant HireRight using multiple phone numbers.

22. Plaintiff Snell has answered multiple such calls, spoken to several of the Defendant's employees and requested that the Defendant stop calling his cell phone, despite which he continues to receive calls from Defendant HireRight, including calls which start with pre-recorded voice messages.

---

[4] https://800notes.com/Phone.aspx/1-800-993-8762/7

23. Defendant HireRight has been calling Plaintiff Snell to run employee background checks for multiple people none of which have ever been employed by the Plaintiff, and despite the Plaintiff having told the Defendant's employees whom he spoke with, to stop calling his cell phone.

24. On November 4, 2021, at 6:09 PM, Plaintiff received a call to his cell phone from the Defendant using the phone number 866-276-8707. Plaintiff answered the call and a pre-recorded voice message played identifying Defendant HireRight. The call was then transferred to a live agent who wanted to run employee verification. Plaintiff disconnected the call.

25. The unauthorized solicitation telephone call that Plaintiff received from or on behalf of Defendant has harmed Plaintiff Snell in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

26. Seeking redress for these injuries, Plaintiff Snell, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

27. Plaintiff Snell brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant HireRight called (2) using an artificial or pre-recorded voice (3) on their cellular telephone number.

28. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Snell anticipates the need to amend the Class definition following appropriate discovery.

29. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

30. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant HireRight or its agents placed pre-recorded voice message calls to Plaintiff Snell and members of the Pre-recorded No Consent Class;

(b) whether Defendant HireRight or its agents placed such calls to Plaintiff Snell and members of the Pre-recorded No Consent Class without first obtaining consent to make those calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA;

(d) whether Class members are entitled to an injunction against Defendant preventing it from making unsolicited prerecorded calls; and

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

31. **Adequate Representation**: Plaintiff Snell will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Snell has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Snell and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Snell nor his counsel have any interest adverse to the Class.

32. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Snell. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Snell and the Pre-recorded No Consent Class)**

33. Plaintiff repeats and realleges paragraphs 1 through 32 of this Complaint and incorporates them by reference herein.

34. Defendant HireRight and/or its agents transmitted unwanted telephone calls to Plaintiff Snell and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

35. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Snell and the other members of the Pre-recorded No Consent Class.

36. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Snell and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

    d)     An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

    e)     Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Snell requests a jury trial.

                                      **EDWIN SNELL**, individually and on behalf of all others similarly situated,

DATED this 15th day of February, 2022.

                                      By: /s/ *Tristan W. Gillespie*
                                      Tristan W. Gillespie, Esq.
                                      600 Blakenham Court
                                      John's Creek, GA 30022
                                      Georgia bar# 268064
                                      404-276-7277
                                      gillespie.tristan@gmail.com

                                      *Attorney for Plaintiff and the putative Class*